318 F.3d 1143
 PRIMA TEK II, L.L.C. and Southpac Trust International, Inc., as Trustee for the Family Trust U/T/A dated 12/8/95, Plaintiffs-Appellants,
v.
POLYPAP, S.A.R.L., Philippe Charrin, and Andre Charrin, Defendants-Appellees.
 No. 02-1164.
 United States Court of Appeals, Federal Circuit.
 DECIDED: February 5, 2003.
 Rehearing and Rehearing En Banc Denied: March 14, 2003.
 
 COPYRIGHT MATERIAL OMITTED Joseph P. Titterington, Dunlap, Codding & Rogers, P.C., of Oklahoma City, OK, argued for plaintiffs-appellants.
 David I. Roche, Baker & McKenzie, of Chicago, IL, argued for defendants-appellees.
 Before GAJARSA, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judge.
 GAJARSA, Circuit Judge.
 
 
 1
 Prima Tek II, L.L.C. and Southpac Trust International, Inc. (collectively "Prima Tek") appeal from the decision of the United States District Court for the Southern District of Illinois granting the motion of Polypap, S.A.R.L., Philippe Charrin, and Andre Charrin (collectively "Polypap") for summary judgment of noninfringement of U.S. Patent Nos. 5,410,856 ("the '856 patent") and 5,615,532 ("the '532 patent"). Prima Tek II, L.L.C. v. Polypap, S.A.R.L., No. 99-CIV-220 (S.D.Ill. Nov. 14, 2001). Because the district court erred in construing the "floral holding material" limitation, we vacate and remand for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 A. The Claimed Invention
 
 
 2
 Southpac Trust International, Inc. is the patent owner and Prima Tek II, L.L.C. is a licensee of the '856 patent, entitled "Decorative Assembly for a Floral Grouping," and the '532 patent, entitled "Method of Making a Decorative Assembly for a Floral Grouping." These patents describe a decorative assembly for flowers comprising a floral holding material and a decorative sheet of material. The floral holding material is constructed of a material capable of receiving a portion of the flowers and supporting them. The decorative sheet is wrapped around the floral holding material, and a band holds the sheet about the floral holding material to provide a decorative covering. The written descriptions of both patents are nearly identical, and each asserted claim of the patents in suit contains a limitation calling for "floral holding material." Independent claim 1 of the '856 patent, which is representative of the disputed claims in most respects, reads:
 
 
 3
 A decorative assembly for a floral grouping, comprising:
 
 
 4
 
 a floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means;
 
 
 
 5
 a sheet of material having an upper surface, a lower surface and outer periphery, the upper surface of the sheet of material being disposed adjacent a portion of the outer peripheral surface of the floral holding material and the sheet of material extending about a portion of the outer peripheral surface of the floral holding material; and
 
 
 6
 means for forming a crimped portion in a portion of the sheet of material with the crimped portion cooperating to hold the sheet of material in the position extended about the floral holding material to provide a decorative covering wherein the means for forming a crimped portion is used to form at least one overlapping fold in the sheet of material, which overlapping fold is substantially bonded via the means for forming the crimped portion.
 
 
 7
 '856 patent, col. 8, ll. 15-39 (emphases added).
 
 
 8
 Each of the other independent claims in the '856 patent is similar to claim 1 but with the following relevant differences in the highlighted portions. After referring to "material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means," claims 15, 39, and 48 of the '856 patent also claim "the stem end of the floral grouping being disposed in the floral holding material...." Id. at col. 10, ll. 12-13 (emphasis added); id. at col. 14, ll. 57-58; id. at col. 17, ll. 25-26. Claims 29, 39, and 48 have an additional limitation requiring "disposing the stem end of the floral grouping in the floral holding material." Id. at col. 12, ll. 46-47 (emphasis added); id. at col. 15, ll. 3-4; id. at col. 17, ll. 38-39.
 
 
 9
 Claim 9, which is the only independent claim at issue in the '532 patent, reads:
 
 
 10
 A method for providing a decorative covering comprising:
 
 
 11
 providing a floral grouping having a bloom end and a stem end;
 
 
 12
 providing a floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means;
 
 
 13
 providing a sheet of material having an upper surface, a lower surface and an outer periphery;
 
 
 14
 disposing the stem end of the floral grouping in the floral holding material;
 
 
 15
 disposing the upper surface of the sheet of material near the outer peripheral surface of the floral holding material and extending the sheet of material about at least a portion of the outer peripheral surface of the floral holding material while leaving at least a portion of the upper end of the floral holding material uncovered, the upper surface of the sheet of material being disposed adjacent the outer peripheral surface of the floral holding material; and
 
 
 16
 disposing banding means about the sheet of material in a position circumferentially about the floral holding material causing the banding means to press a portion of the sheet of material against the outer surface of the floral holding material for cooperating to hold the sheet of material in the position extended about the floral holding material to provide the decorative covering.
 
 
 17
 '532 patent, col. 9, ll. 35-64 (emphases added).
 
 
 B. The District Court Decision
 
 
 18
 Prima Tek initiated an action against Polypap in the Southern District of Illinois, claiming, inter alia, that Polypap's Bouquett'O product infringed independent claims 1, 15, 29, 39, and 48 of the '856 patent and claim 9 of the '532 patent, as well as dependent claims 4-5, 7-11, 16, 19-24, 30, 33-36, and 43-45 of the '856 patent and claims 10, 11, and 13-15 of the '532 patent. Prima Tek and Polypap both moved for summary judgment with respect to claim construction and infringement issues. The district court conducted a Markman hearing limited to claim construction issues. Prima Tek II, slip op. at 2. The district court construed the disputed claim terms, including the phrase "floral holding material," which it determined to mean "a three-dimensional solid, semisolid, or granular material capable of giving support to individual flowers when their stems are inserted into the material." Id. The district court construed the limitation that the stem ends be "disposed in" floral holding material and "disposing the stem in the floral holding material" to mean that the "stem end of the flower is inserted into the floral holding material." Id. at 2-3. Based on that construction, the court found that Polypap was entitled to a summary judgment that the Bouquett'O product did not infringe the asserted claims of the '856 and '532 patents, either literally or under the doctrine of equivalents, because "the flowers and stem ends are not actually inserted into and through the actual plastic material of the cone" but rather "inserted into a hole formed at the top of the cone." Id. at 6-7. Finally, the district court denied Prima Tek's motion for summary judgment of literal infringement of the '856 and '532 patents and denied as moot Prima Tek's motion for summary judgment regarding Polypap's affirmative defenses. Prima Tek timely appealed, and we have jurisdiction of this appeal pursuant to 28 U.S.C. § 1295(a)(1).
 
 II. DISCUSSION
 
 A. Standard of Review
 
 
 19
 Our review of a grant of summary judgment of patent infringement or noninfringement is plenary. Cole v. Kimberly-Clark Corp., 102 F.3d 524, 528, 41 USPQ2d 1001, 1004 (Fed.Cir.1996). We first determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1359, 54 USPQ2d 1308, 1312 (Fed.Cir.2000) (quoting Fed.R.Civ.P. 56(c)). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir.1998).
 
 
 20
 "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc) (internal citation omitted), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is a question of law, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc), while infringement, either literal or under the doctrine of equivalents, is a question of fact, Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).
 
 
 21
 In this case, the claim construction issue centers on the phrases "floral holding material" and "substantially bonded" contained in the asserted claims. We first discuss the proper construction of those phrases and then compare the properly construed claims to the accused Bouquett'O product. Because we cannot determine with certainty based on the factual record before us whether there are any genuine issues of material fact regarding infringement, either literally or under the doctrine of equivalents, by the accused product in light of the proper claim construction, we vacate and remand for further proceedings consistent with this opinion.
 
 
 B. Claim Construction
 
 
 22
 Claim construction begins with the words of the claim. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1341, 60 USPQ2d 1851, 1854 (Fed.Cir.2001). Generally, terms in a patent claim are given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art. Id. After identifying the plain meaning of a disputed claim term, the court examines the written description and the drawings to determine whether use of that term is consistent with the ordinary meaning of the term. Day Int'l, Inc. v. Reeves Bros., Inc., 260 F.3d 1343, 1348, 59 USPQ2d 1790, 1793 (Fed.Cir. 2001). This heavy presumption in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art is overcome: (1) where the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term; or (2) where the term chosen by the patentee so deprives the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used. Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 990, 50 USPQ2d 1607, 1610 (Fed.Cir.1999). Similarly, the examination of the written description and drawings is necessary to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1344, 58 USPQ2d 1059, 1065 (Fed. Cir.2001).
 
 
 23
 Notwithstanding the fact that the claim language must be examined in light of the written description, limitations may not be read into the claims from the written description. Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1187, 48 USPQ2d 1001, 1005 (Fed.Cir. 1998). Similarly, the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration. Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 956, 55 USPQ2d 1487, 1491 (Fed.Cir.2000). We have recognized that there is sometimes "a fine line between reading a claim in the specification, and reading a limitation into the claim from the specification." Comark, 156 F.3d at 1186, 48 USPQ2d at 1005.
 
 
 24
 "After examining the written description and the drawings, the same confirmatory measure must be taken with the prosecution history, since statements made during the prosecution of a patent may affect the scope of the invention." Rexnord, 274 F.3d at 1343, 60 USPQ2d at 1855. In some cases, this may take the form of an express disclaimer of a particular claim construction. See, e.g., Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1361-62, 60 USPQ2d 1493, 1500-01 (Fed.Cir.2001) (finding an explicit disclaimer of "pressure valves" and "dynamic seals" when the patentee had so characterized the prior art valves during the patent prosecution, and had asserted that his invention, in contrast, comprised "vacuum valves" and "static seals"). In other cases, the statements may offer interpretative assistance to the court in construing a particular claim. See Rheox, Inc. v. Entact, Inc., 276 F.3d 1319, 1325-27, 61 USPQ2d 1368, 1372-74 (Fed.Cir. 2002) (rejecting a patentee's argument that the broader, ordinary meaning of "calcium orthophosphate" should apply, finding that claim amendments and statements during the prosecution as to the water-insolubility of the invention operated to exclude the more narrow category of monocalcium orthophosphate).
 
 
 1. The "Floral Holding Material" Limitation
 
 
 25
 The district court construed the claim language "floral holding material" to mean "a three-dimensional solid, semi-solid, or granular material capable of giving support to individual flowers when their stems are inserted into the material," and required that the flower stems be "inserted into and through" the floral holding material. For the reasons given below, we conclude this construction was erroneous. Neither the phrase "inserted into" nor "inserted through" appears in any of the asserted claims. Instead, all of the claims at issue require that the "floral holding material" be constructed of "material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means." '856 patent, col. 8, ll. 19-22. The claim language does not require that the stem end of the flower be inserted into and through the floral holding material. Moreover, we find the teaching of the written description is at most ambiguous whether "capability of receiving a portion of the floral grouping" requires insertion into and through the floral holding material because floral holding material, as we discuss below, is not limited, as the district court held, to floral foam or soil. Similarly, the claim language requiring flower stem ends to be "disposed in" the floral holding material does not require that floral stem ends be "inserted into and through" the material. We cannot conclude from the foregoing that the patentees unambiguously limited the scope of the claimed invention to require flowers to be "inserted into and through" the floral holding material. For us to do so here would be to impermissibly read a limitation into the claims from the written description. Comark, 156 F.3d at 1186, 48 USPQ2d at 1005 ("[W]hile ... claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims." (quoting Sjolund v. Musland, 847 F.2d 1573, 1581, 6 USPQ2d 2020, 2027 (Fed.Cir.1988))). Here, the claims only require that the "floral holding material" have an upper end, a lower end, and an outer peripheral surface, and be constructed of a substance capable of receiving and supporting a floral grouping without any pot means.
 
 
 26
 While Polypap recognizes that none of the claims at issue explicitly require that the flower stem ends be "inserted into and through" the floral holding material, it nonetheless suggests that a proper interpretation of the terms "floral holding material" and "material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means" compels such a limited claim scope. In doing so, Polypap points out that Figure 2 of the '856 patent, and at least some of the language of the written description and prosecution history, suggests that the preferred embodiment of the invention narrows the scope of "floral holding material" to floral foam or soil. Figure 2 of the '856 patent, which refers to one preferred embodiment, is shown below:
 
 
 27
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 28
 Polypap bases its argument on the following language in the written description:
 
 
 29
 As shown in FIG. 2, the floral holding material 18 has an upper end 20, a lower end 22 and an outer peripheral surface 24. The floral holding material 18 shown in FIG. 2 is spherically shaped, although the floral holding material 18 may be any shape desired in any particular application. The floral holding material 18 is constructed of a material capable of receiving a portion of a floral grouping 26 and holding or supporting the floral grouping without any pot means such as a separate flower pot for example. The floral holding means [sic] 18 may be the type of material commonly referred to in the art as floral foam or Oasis or may be soil or artificial soil or other earth composition so long as the material is capable of holding its predetermined shape and capable of receiving and supporting the floral grouping 26 without any additional pot means. The floral holding material 18 may be capable of receiving and holding water for supplying water to the floral grouping 26.
 
 
 30
 '856 patent, col. 3, ll. 40-58.
 
 
 31
 We find this argument unpersuasive. First, the written description does not describe "with reasonable clarity, deliberateness, and precision" the definition of "floral holding material" proposed by Polypap. See In re Paulsen, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed.Cir. 1994). The written description only states that the floral holding material "may be" (not must be) the type of material commonly referred to in the art as floral foam or soil. Indeed, the many uses of the term throughout the '856 patent are consistent with a broader definition, one encompassing material of any shape or type. '856 patent, col. 3, ll. 44-45 ("[T]he floral holding material 18 may be any shape desired in any particular application."); id. at col. 3, ll. 50-52 ("The floral holding means [sic] 18 may be the type of material commonly referred to in the art as floral foam or Oasis or may be soil...."). The written description makes quite clear that the open-ended examples of "floral holding material" are merely illustrative; that is, they do not exhaustively delineate the "floral holding material" that is clearly defined in the claims. The general rule, of course, is that claims of a patent are not limited to the preferred embodiment, unless by their own language. See, e.g., Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 866, 45 USPQ2d 1225, 1229 (Fed.Cir.1997) ("It is well settled that device claims are not limited to devices which operate precisely as the embodiments described in detail in the patent."). Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition. See, e.g., Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1385, 47 USPQ2d 1725, 1731-32 (Fed.Cir.1998) (refusing to limit a term used "interchangeably" in the written description to only one of the uses of the term). There is nothing in this case that warrants departing from the general rule. That the term "floral holding material" is used at various points in the written description to refer to a material of any shape or type is simply not "a special and particular definition created by the patent applicant," Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249, 48 USPQ2d 1117, 1121 (Fed.Cir.1998), and is thus an insufficient reason to limit the scope of the claim.
 
 
 32
 Polypap also argues that the patentee ascribed a special meaning to the term "floral holding material" in the prosecution history. See, e.g., Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1378, 49 USPQ2d 1065, 1068-69 (Fed.Cir.1998) (stating that explicit meanings given to claim terms in order to overcome prior art will limit those terms accordingly). In particular, Polypap asserts that the examiner's statement in an October 1, 1993 office action citing U.S. Patent No. 3,316,675 to Cartwright as having "roots in the holding material" and citing U.S. Patent No. 2,774,187 to Smithers as having "a system in which flower stems are stuck into a block of holding material" is a clear definition of "floral holding material." It is undisputed that the examiner's statements were focused on the requirement that the Cartwright and Smithers patents used "holding material" in the form of soil or an earth composition as a means of holding the roots of a growing plant in place. However, the examiner never stated that "holding material" is equivalent to the "floral holding material" claimed in the patents. We note that drawing inferences of the meaning of claim terms from an examiner's silence is not a proper basis on which to construe a patent claim. See DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1326, 57 USPQ2d 1889, 1896 (Fed.Cir.2001).
 
 
 33
 We conclude that the prosecution history does not attribute a special meaning to the phrase "floral holding material," and there were no express representations made in obtaining the patent regarding the scope and meaning of the claim terms. Moreover, the scope of the asserted claims may be ascertained from the plain language of the claims. See Intervet Am., Inc. v. Kee-Vet Labs., Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) (noting that "courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word in a claim is not to be confused with adding an extraneous limitation appearing in the specification which is improper" (internal quotation marks and emphasis omitted)). It is also well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment, see Laitram Corp. v. Cambridge Wire Cloth Co., 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."), which we deem the district court has done here. Rather, the terms of the phrase "floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means" must be given their ordinary meaning.
 
 
 2. The "Substantially Bonded" Limitation
 
 
 34
 We next turn to Polypap's contention that the district court erred in concluding that the limitation calling for overlapping folds of the assembly of the asserted patents to be "substantially bonded" to mean that the bonding called for in the claims could be done with "a band or bonding material." Polypap argues that the relevant definition of "substantially bonded" means "composed of two or more layers or the same or different fabrics held together by an adhesive." Webster's Ninth New Collegiate Dictionary 166 (1986). Thus, Polypap concludes that there is an independent basis that the claims at issue are not literally infringed, "because no adhesives or heat seals are used or suggested for use as part of the making of the Bouquett'O."
 
 
 35
 We conclude that the district court did not err in construing the "substantially bonded" limitation. A reading of the claims leads to the conclusion that the overlapping folds be "substantially bonded via the means for forming the crimped portion." '856 patent, col. 8, ll. 38-39 (emphasis added). An example of "forming the crimped portion" is the placement of a band. Id. at col. 4, ll. 33-35 ("As shown in FIG. 2, the crimped portion 32 is formed by placing a band 34 about a portion of the sheet of material 10...."). The written description defines "band" as follows:
 
 
 36
 The term "band" as used herein, means any material which may be secured about an object such as the flower pot 16 such bands commonly being referred to as elastic bands or rubber bands and also includes any other type of material such as a string or elastic piece of material, non-elastic piece of material, a ribbon, a piece of paper strip, a piece of plastic strip, a piece of wire, a tie, wrap or twist tie or combination thereof or any other device capable of gathering the sheet of material 10 to removably or substantially permanently form the crimped portion 32 and secure the crimped portion 32 formed in the sheet of material 10.
 
 
 37
 Id. at col. 4, ll. 40-53. Thus, "substantially bonded" does not require that the overlapping fold in the sheet of material be substantially bonded by an adhesive. Rather, the "substantially bonded" limitation requires that the overlapping fold in the sheet of material be gathered or crimped about the upper end of the floral holding material by a band or bonding material.
 
 
 38
 Polypap also argues that, under our construction of the "substantially bonded" limitation, claims 1, 15, 29, and 39 of the '856 patent are invalid as anticipated or obvious. This argument is premature and is not before us on appeal. Contrary to Polypap's contention, we need not invalidate the '856 patent because the invalidity argument was raised only as an affirmative defense by Polypap, not in the form of a counterclaim, and the district court denied as moot Prima Tek's motion for summary judgment regarding Polypap's affirmative defenses. See, e.g., Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 93-94, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (distinguishing between asserting an affirmative defense of invalidity and filing a patent counterclaim for declaratory judgment of invalidity). The district court judgment contained no reference to the issue of invalidity of the '856 or '532 patent, and the district court's resolution of the issue of invalidity as an affirmative defense was not necessary to judgment. For that reason, nothing in this opinion or the district court's judgment regarding Polypap's affirmative defense of invalidity should have any preclusive effect on Polypap's ability to argue invalidity on remand. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (stating for collateral estoppel to apply, first court's resolution of the issue in question must have been "necessary to the outcome of the first action"); Restatement (Second) of Judgments § 27 cmt. h, illus. 14 (1982) (explaining that in suit for trademark infringement, a finding that the trademark is valid but not infringed does not preclude the same defendant from asserting the defense of invalidity in subsequent litigation between the parties).
 
 
 39
 In sum, we conclude that, when viewed as a whole, the claim language, the written description, and the prosecution history require that the "floral holding material" have an upper end, a lower end, an outer peripheral surface, and be constructed of a substance capable of receiving and supporting a floral grouping without any pot means. Moreover, the "substantially bonded" limitation requires that the overlapping folds in the sheet of material be gathered or crimped about the upper end of the floral holding material by a band or bonding material. We have also considered Polypap's other arguments on this issue and find them unpersuasive.
 
 
 C. Infringement
 
 
 40
 The second step of the infringement analysis is comparing the properly construed claims with the allegedly infringing devices. Cybor, 138 F.3d at 1467, 46 USPQ2d at 1184. This comparison is a question of fact. Id. Thus, if we agree with the district court that there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law, we can affirm the district court's grant of summary judgment. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 41
 The district court based its decision to grant summary judgment of noninfringement by the Polypap Bouquett'O product based on the "floral holding material" limitation in the asserted claims. The Bouquett'O product is a thin, semicircular piece of clear plastic which, when shaped into a cone, receives the stems of flowers through an open hole formed at the top. The district court concluded that because the flowers and stems are not "inserted into and through" the plastic material of the cone, the Bouquett'O does not contain the "floral holding material" limitation and does not literally infringe the patents at issue. The district court also concluded that the Bouquett'O does not infringe under the doctrine of equivalents because there is a substantial difference in the way in which the flowers are supported, that is, "the patents at issue need three-dimensional floral holding material into which flower stems are inserted into and through in order to achieve floral support, while the shape of the Bouquett'O itself, absent three-dimensional material, provides support." In support of the district court's conclusion, Polypap contends that there is no infringement by its accused device because the Bouquett'O does not contain "floral holding material." In addition, Polypap asserts that to the extent that the Bouquett'O cone is formed around the stems of a floral grouping, in no circumstances are the flowers and stem ends "inserted into and through" the cone after the cone is assembled. Finally, Polypap argues that there is no infringement under the doctrine of equivalents because there is a substantial difference in the way in which the flowers are supported, i.e., it is the flexible fingers at the top of the cone and the wide base created by folding the sheet into a cone shape which support a bouquet of flowers in the Bouquett'O.
 
 
 42
 We do not agree with Polypap's reasoning that summary judgment of noninfringement was properly granted by the district court. Polypap's assertions of noninfringement, like the district court's conclusions, are premised on an erroneous construction of the "floral holding material" limitation. As set forth in the claim construction above, the "floral holding material" limitation does not require that the flowers and stem ends are "inserted into and through" the material. Rather, the "floral holding material" limitation calls for material having an upper end, a lower end, and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means. We cannot determine with certainty based on the factual record before us whether there are any genuine issues of material fact regarding infringement, either literally or under the doctrine of equivalents, by the accused product in light of our revised claim construction. Accordingly, we vacate the district court's grant of summary judgment of noninfringement, either literally or under the doctrine of equivalents, and remand for further proceedings consistent with this opinion.
 
 III. CONCLUSION
 
 43
 Because the district court erred in construing "floral holding material" and we cannot determine with certainty based on the factual record before us whether there are any genuine issues of material fact regarding infringement, we vacate the district court's grant of summary judgment of noninfringement and remand for further proceedings consistent with this opinion.
 
 
 44
 
 VACATED AND REMANDED.