# United States Court of Appeals for the Federal Circuit

04-1411, -1421

PRIMA TEK II, L.L.C. and
SOUTHPAC TRUST INTERNATIONAL, INC.,
as Trustee for the Family Trust U/T/A dated 12/8/95,

                                        Plaintiffs-Cross Appellants,

v.

POLYPAP, S.A.R.L.,
PHILIPPE CHARRIN, and ANDRE CHARRIN,

                                        Defendants-Appellants.

    Joseph P. Titterington, Dunlap, Codding & Rogers, P.C., of Oklahoma City, Oklahoma, argued for plaintiffs-cross appellants.

    David I. Roche, Baker & McKenzie, of Chicago, Illinois, argued for defendants-appellants.

Appealed from: United States District Court for the Southern District of Illinois

Judge Michael J. Reagan

# United States Court of Appeals for the Federal Circuit

04-1411, -1421

PRIMA TEK II, L.L.C. and
SOUTHPAC TRUST INTERNATIONAL, INC.,
as Trustee for the Family Trust U/T/A dated 12/8/95,

Plaintiffs-Cross Appellants,

v.

POLYPAP, S.A.R.L.,
PHILIPPE CHARRIN, and ANDRE CHARRIN,

Defendants-Appellants.

_____

DECIDED: June 22, 2005

_____

Before GAJARSA, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

DYK, <u>Circuit Judge</u>.

Polypap, S.A.R.L., Philippe Charrin, and Andre Charrin (collectively "Polypap") appeal from the judgment of the district court holding claim 15 of United States Patent No. 5,410,856 (the "'856 patent") and claim 9 of United States Patent No. 5,615,532 (the "'532 patent") not invalid and infringed by Polypap, and enjoining Polypap from further infringement by making, using, or selling the accused device, or instructing others in its use. <u>Prima Tek II, L.L.C. v. Polypap SARL</u>, 316 F. Supp. 2d 693 (S.D. Ill. 2004). Prima Tek II, L.L.C. and Southpac Trust International, Inc., as Trustee for the

Family Trust U/T/A dated 12/8/95 (collectively "Prima Tek") cross-appeal the judgment of the district court holding Polypap not liable for induced or contributory infringement of the asserted claims of the patents. We reverse because we find the asserted claims of the '856 and '532 patents invalid as anticipated, and dismiss the cross-appeal as moot.

BACKGROUND

I

Prima Tek and Polypap are competitors in the floral products market. Polypap is a French business that sells a product in the United States called the Bouquett'O ("the accused product"). The accused product is a semicircular piece of plastic that can be formed into a disposable device for holding floral arrangements. On March 29, 1999, Prima Tek filed suit against Polypap for infringement of, inter alia, claim 15 of the '856 patent and claim 9 of the '532 patent. The district court granted summary judgment of non-infringement in favor of Polypap, which decision was appealed to this court. Prima Tek II, L.L.C. v. Polypap, S.A.R.L., 318 F.3d 1143, 1145 (Fed. Cir. 2003). We held that the district court had used an incorrect claim construction, vacated the decision, and remanded for further proceedings. Id. at 1154. We specifically held that the phrase "floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means" must be given its ordinary meaning, and is not limited to floral foam or soil. Id. at 1149, 1152.

After a bench trial, the district court held the asserted claims of the patents not invalid and infringed by Polypap, and accordingly enjoined Polypap from making, using,

or selling the accused product or instructing others in its use. The district court rejected Prima Tek's claims that Polypap was liable for induced and contributory infringement. The district court also rejected Polypap's claim that Prima Tek engaged in inequitable conduct in the prosecution of the patents. Polypap appeals and Prima Tek cross-appeals from the district court's judgment of no induced or contributory infringement.

## II

The asserted claims describe an assembly and method for displaying a floral grouping. They generally describe a floral grouping in which flower stems are inserted into floral foam, the foam wrapped in a sheet of material and tied near the top. Claim 15 of the '856 patent includes limitations for, inter alia, a "floral holding material," the absence of any "pot means," and a "crimped portion in the sheet of material" having "at least one overlapping fold."[1] Claim 9 of the '532 patent includes limitations for, inter

---

[1]      Claim 15 of the '856 patent reads in its entirety:

15. A decorative assembly comprising:
a floral grouping having a bloom end and a stem end;
a floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means, the stem end of the floral grouping being disposed in the floral holding material and the floral holding material supporting the floral grouping with a portion of the floral grouping near the bloom end thereof extending a distance upwardly beyond the upper end of the floral holding material;
a sheet of material having an upper surface, a lower surface and an outer periphery, the upper surface of the sheet of material being disposed adjacent a portion of the outer peripheral surface of the floral holding material and the sheet of material extending about a portion of the outer peripheral surface of the floral holding material, the sheet of material extending about the outer peripheral surface of the floral holding material and leaving uncovered a portion of the floral holding material near the upper end thereof uncovered whereby the floral

---

alia, "providing a floral holding material," the absence of any "pot means," and "disposing banding means about the sheet of material . . . causing the banding means to press a portion of the sheet of material against the outer surface of the floral holding material."[2]

---

grouping extends upwardly beyond the upper end of the floral holding material and above the sheet of material; and

means for forming a crimped portion in the sheet of material with the crimped portion cooperating to hold the sheet of material in the position extended about the floral holding material to provide a decorative covering, the crimped portion being formed in the sheet of material near the upper end of the floral holding material wherein the means for forming a crimped portion is used to form at least one overlapping fold in the sheet of material, which overlapping fold is substantially bonded via the means for forming the crimped portion and the crimped portion engaging a portion of the floral holding material for cooperating to hold the sheet of material in the position extended about the floral holding material to provide a decorative covering.

[2] Claim 9 of the '532 patent reads in its entirety:

9. A method for providing a decorative covering comprising:

providing a floral grouping having a bloom end and a stem end;

providing a floral holding material having an upper end, a lower end and an outer peripheral surface, the floral holding material being constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means;

providing a sheet of material having an upper surface, a lower surface and an outer periphery;

disposing the stem end of the floral grouping in the floral holding material;

disposing the upper surface of the sheet of material near the outer peripheral surface of the floral holding material and extending the sheet of material about at least a portion of the outer peripheral surface of the floral holding material while leaving at least a portion of the upper end of the floral holding material uncovered, the upper surface of the sheet of material being disposed adjacent the outer peripheral surface of the floral holding material; and

disposing banding means about the sheet of material in a position circumferentially about the floral holding material causing the banding means to press a portion of the sheet of material against the outer surface of the floral holding material for cooperating to hold the sheet of material in the position extended about the floral holding material to provide the decorative covering.

04-1411, -1421                                    4

This case presents the question of whether the asserted claims are invalid as anticipated. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

In considering questions of anticipation, we are mindful that if an invalid patent is issued, competitors may be deterred from challenging it by the substantial cost of litigation. Even if a successful challenge is brought, competition may be suppressed during the pendency of the litigation. The risk of antitrust liability or litigation sanctions may deter some from seeking to secure or enforce invalid patents, but our patent system depends primarily on the Patent and Trademark Office's ("PTO's") care in screening out invalid patents during prosecution.

Anticipation is ultimately a question of fact, but also depends on proper claim construction—a legal issue. We review the district court's claim construction without deference, and its factual determinations for clear error. Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1058 (Fed. Cir. 2004). Here, extensive prior art exists regarding products and methods for displaying floral groupings, and the district court considered prior art stretching back over a century. It appears likely that the asserted claims are anticipated by the 1899 Bertels reference, but for simplicity we address only the more recent Charrin reference, which the district court found to be "substantially identical" to the much earlier Bertels reference. 316 F. Supp. 2d at 707. Under the appropriate standard, the Charrin prior art reference, which was before the examiner during prosecution of the '532 patent, clearly anticipates the asserted claims of the patents in suit. The Charrin reference is a published French patent application naming

Andre Charrin as the applicant and inventor. In one embodiment, flowers are inserted into a mass of wetted moss about which a cover made of waterproof material is wrapped.[3] The cover is tied at the top by way of a cord passing through holes in the cover, which is then tightened.

Prima Tek agrees that the Charrin reference anticipates but for three limitations: the "without any pot means" limitation, the alleged requirement that the floral holding material hold its shape, and the crimping limitation (found only in claim 15 of the '856 patent).

We first consider the meaning of the claim term "pot means" in order to determine whether the "without any pot means" limitation was satisfied by the Charrin reference. We did not construe this claim language in our prior opinion. The district court defined the "[m]aterial capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means" limitation as "any material that can function as floral holding material which supports the floral grouping without a closed bottom receptacle such as a flower pot, vase, etc." 316 F. Supp. 2d at 698. Thus, the district court appears to have construed "pot means" as "a closed bottom receptacle such as a flower pot, vase, etc." The parties did not contest this construction in their briefs, but at oral argument each proposed a different construction. Polypap urged a broader construction of "a shell-like structure that supports a grouping of

---

[3] The parties dispute the proper translation of the French word "mousse" as found in the Charrin reference. Prima Tek contends, and district court held, that the word should be translated as "moss." Polypap contends that the word should be translated as "foam." In light of our disposition, this controversy need not be addressed for we conclude that the asserted claims of the '532 and '856 patents are invalid even assuming that "mousse" is properly translated as "moss" as Prima Tek contends.

flowers." Prima Tek urged an even broader construction of "a container, or anything that serves like a container, to hold the floral holding material in place." The specifications do not define pot means other than to give the example of a flower pot. '856 patent, col. 3, ll. 48-49; '532, col. 3, ll. 50-51.

When construing claims, we look first "to the words of the claims themselves . . . to define the scope of the patented invention." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[W]ords in a claim are generally given their ordinary and customary meaning" unless some "special definition of the term is clearly stated in the patent specification or file history." Id. We may consult with dictionaries "in determining the ordinary and customary meanings of claim terms." Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002). "Pot" is defined as a "rounded metal or earthen container of varying size used chiefly for domestic purposes." Webster's Third New International Dictionary 1774 (2002). The Charrin reference clearly satisfies the "without a pot means" limitation. It does not use a metal or earthenware container. Prima Tek's argument that the wire or string tied around the moss of the Charrin reference is a pot means is without merit.

The district court appears to have construed the term "floral holding material" to require that the material hold its predetermined shape. As required by our previous opinion, 318 F.3d at 1152, the district court construed "floral holding material" in the context of its infringement determination to mean "[h]as an upper end, a lower end and an outer peripheral surface and is constructed of a material capable of receiving a portion of the floral grouping and supporting the floral grouping without any pot means," 316 F. Supp. 2d at 697-98. However, in its anticipation analysis, the district court

appeared to change its claim construction to distinguish the Charrin reference from the patents by concluding that a necessary element of the term "floral holding material" is "that the material is [ ]capable of holding its predetermined shape." 316 F. Supp. 2d at 706.[4] When this court previously construed "floral holding material," we held that the term should be given its ordinary meaning and is not limited to floral foam or soil. We did not include in that construction a requirement that the material be capable of holding its predetermined shape. 318 F.3d at 1149-52. The district court erred in adding such a limitation.

Prima Tek attempts to defend the district court's construction by pointing to claim language requiring that the floral holding material have an upper end, a lower end, and an outer peripheral surface. This language, of course, includes virtually anything that is capable of holding flowers, and does not require that the material hold its predetermined shape. Contrary to Prima Tek's argument, the specification does not suggest otherwise. The specification reads:

> The floral holding means 18 may be the type of material commonly referred to in the art as floral foam or Oasis TM or may be soil or artificial soil or other earth composition <u>so long as the material is capable of holding its predetermined shape and capable of receiving and supporting the floral grouping 26 without any additional pot means</u>.

'856 patent, col. 3, ll. 50-56; '532 patent, col. 3, ll. 52-57 (emphasis added). This language, which appears as part of the Description of the Preferred Embodiments, merely describes the preferred embodiment, and does not define floral holding material to include an undefined limitation not found in the ordinary meaning of the claim

---

[4] The district court wrote: "In the drawing, the [moss] is shown tied with a string or wire—an indication that the material is incapable of holding its predetermined shape, which is a necessary element of the term 'floral holding material.'" <u>Id.</u>

language. We have repeatedly made clear that limitations cannot be imported from the specification into the claims. E.g., Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotations and citation omitted). The language of the specifications here evinces no such clear intention.

Finally, the district court held that the Charrin reference does not include the crimping and overlapping fold limitations of claim 15 of the '856 patent. The Charrin reference discloses the tying of a sheet of material with a string laced through holes in the sheet. The district court found that Polypap offered "no evidence that a crimped portion is formed in the sheet of material" and therefore held the crimping limitation not present in Charrin. 316 F. Supp. 2d at 707. The appellant concedes that the Charrin reference does not include a crimping limitation, but argues that the limitation is inherent. We have previously held that "a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it." MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999). Inherent anticipation does not require an appreciation of the inherent limitation by those of skill in the art before the critical date of the patents in issue. Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003).

Here the undisputed evidence shows that crimping and overlapping folds are inherent to the Charrin reference. The drawings of the Charrin reference disclose a sheet of material containing a number of holes through which a string is laced. One

figure shows the sheet of material tied up around a flower pot by the string such that the material has overlapping folds and is crimped.[5] Another figure shows the material lying flat with the string loose and a block of moss sitting on the sheet of material. The Charrin reference itself shows that crimping is inherent. Moreover, Philippe Charrin provided testimony that when tightened, the string would create overlapping folds in the sheet of material.[6] Prima Tek presented no rebuttal evidence. The undisputed record shows that the crimping means was inherent in Charrin.[7]

Under these circumstances we conclude that claim 15 of the '856 patent and claim 9 of the '532 patent were anticipated by Charrin, and that claim 15 of the '856 patent and claim 9 of the '532 patent are invalid.

---

[5]      That figure appears in the Charrin reference:



[6]      Philippe Charrin testified as follows:

Q      . . . Do you see a string shown in figure 5?
A      Yes.
. . . .
Q      When the string is tightened to pull the sheet against the floral holding material, are there overlapping folds that are formed in the sheet?
A      Yes, overlaps.

(J.A. at 1153.)

[7]      Expert testimony was not required, the technology being easily understood without expert testimony. Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369 (Fed. Cir. 2004).

CONCLUSION

Claim 15 of the '856 patent and claim 9 of the '532 patent are invalid as anticipated by the Charrin reference. For this reason, the judgment of the district court is reversed. The cross-appeal is dismissed as moot since there can be no contributory or induced infringement of invalid patent claims.

<u>REVERSED</u>

COSTS

Costs to Polypap.